THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES A. BAINE, Defendant-Appellee.

Fifth District    No. 79-326

Opinion filed March 27, 1980.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

John H. Reid and Thomas W. Mansfield, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Defendant, James A. Baine, was charged by informations with three separate burglaries. Upon the hearing of a motion to suppress, the trial court suppressed a confession given by defendant. The State now appeals, contending that the trial court erroneously relied on an offer of leniency by a police officer as the single dispositive factor requiring suppression. We agree and therefore reverse the order of the circuit court.

The aforesaid informations were filed on January 23, 1979. Defendant was arraigned on February 2, 1979, and pleaded not guilty to all three charges. It was determined at the arraignment that the defendant was 21 years of age, had a 10th-grade education, and read and understood the English language. A preliminary hearing was held the same day. On March 9, 1979, defendant filed a motion to suppress a statement given the police on numerous grounds, among them that a promise of leniency was an inducement for the confession. A hearing was held on the motion on May 15, 1979.

The State's only witness at the hearing was Officer Charles Myers, the arresting officer and a member of the Hartford Police Department at the time of the arrest. Officer Myers testified that on January 21, 1979, defendant was arrested in Hartford, Illinois, pursuant to a warrant for driving a motor vehicle with a revoked license. The officer testified that defendant had been arrested numerous times by members of the Hartford Police Department, was personally known to him, and the two had conversed approximately 50 times in the past.

Defendant was taken to the police station, booked, placed in a jail cell and advised of his *Miranda* rights. At the time of this arrest Officer Myers was investigating the instant burglaries, and since defendant had reportedly been observed in the area of one of them, defendant was requested to take a polygraph examination. Defendant had agreed to take one some two to three weeks prior to this, but for numerous reasons the test never occurred. In response to the present request, the defendant declined to take the examination.

Defendant was retained in custody that night. While in jail, he was

fed at regular intervals, permitted to use the telephone, did not appear to be under the influence of drugs or alcohol, and was taken to the hospital upon request in order to obtain medication for a sinus condition. At no time, however, did he ever request to see an attorney.

The following day Officer Myers renewed his request that defendant take a polygraph examination. Defendant declined, but asked to see his girl friend, which was allowed. After the visit, defendant agreed to take the test. Officer Myers told defendant that if he passed the polygraph, no further investigation of his connection with the burglaries would be pursued.

Officer Myers transported the defendant to Fairview Heights where he was again advised of his rights and where the test was administered for one to two hours. During their return to the Hartford Police Department, defendant asked Officer Myers the results of the polygraph, and was told that he had "flunked." They returned between 4:30 and 5:30 p.m., at which time defendant was served supper. Defendant threw the meal in the toilet and was very upset, according to Officer Myers. He then told the officer that he would be willing to pay for the items taken in the burglaries, but was informed this would be impossible because he was on parole. Defendant then asked about the possible prison sentences he could get, and Officer Myers reviewed a chart showing sentencing alternatives for burglary and explained them to defendant. Officer Myers then testified that he told defendant, "I would talk with the State's Attorney; and, you know, tell him to recommend the lowest; but I also advised him that we were not the State's Attorneys office; what they did was entirely up to them."

Upon receiving a call, Officer Myers left the station. In the interim, defendant received another visit from his girl friend. When Myers returned to the station, defendant asked to speak with him and was taken into an office. After being advised of his *Miranda* rights, defendant gave a statement at 8:10 p.m., in which he confessed to the perpetration of the burglaries. The statement was given orally and recorded on tape, and transcribed the next morning. The statement, which contained a waiver of rights, was eight pages in length and defendant spent approximately 10 minutes reading it before signing the bottom of each page.

Defendant called Assistant State's Attorney Steven Mudge as a witness at the suppression hearing, but following a discussion off the record, the parties stipulated that on January 23, 1979, Officer Myers went to the prosecutor's office and told him a statement had been taken. Moreover, Officer Myers informed him that he had promised defendant a recommendation for the minimum sentence on the charges. The prosecutor replied that the matter would be taken care of.

Following the hearing and argument by counsel, the trial court ruled as follows:

"THE COURT: ALL right. * * * [T]he Court has heard the evidence and examined and reviewed People's Exhibit 1, and, first, finds and feels that although the matters contained in the statement, itself, would only be considered peripherally to this matter, the court feels that statement that was made by the Defendant in this case was a statement that the Court feels was made in truth; and that the Defendant's statement was a true statement.

The issue here is whether it was voluntarily made under the laws and the cases and the—and as such whether or not it should be admitted. The Court finds that the matters—has reviewed the matters submitted by the State, reviewed the matters and the Memorandum of Law submitted by the Defendant and finds that the case of *People versus Ruegger* 32 Ill. App. 3d 765, seems to pretty well lay out what the law is or *what the Court is required to do in this case*; and that is that the Motion to Suppress should be allowed and is allowed; because of the fact, as I quote from that case, no, this isn't the quote yet.

The matter of the testimony and the polygraph examination isn't significant as far as I am concerned, the significance would be in the matter of implying to the Defendant that there would be a suggestion of leniency. My own personal feeling prior to this case would be that as long as the Defendant knew and was advised that he knew of his rights, could have his attorney there, didn't have to make a statement, would be sufficient; and I feel that I stand corrected by the Appellate Court; and that's why I am ordering, as I see, *directed to order* by the Appellate Court that the Motion be suppressed because of that implication of there would be a suggestion that the State's Attorney would be advised that to go easy or that he would recommend a minimum sentence.

The sanctions seem to be at the present day, anyhow, that the Motion should be allowed; and that the statement is suppressed. I feel that those sanctions are grave, and they are heavy; but that's all we have at the present time, at least this year, and, again, quoting from the *Ruegger* case on page 54, which really refers to another case, 'It would go easier for him in court if he made a statement but there was no testimony by the defendant nor any other evidence that defendant's confession had been induced by hopes of leniency.' Still, the Motion to Supress had been allowed in that case; and based on that case and that from that quote again on

pages 54 and 55, 'They would go to bat for him on such matters as a recognizance bond and probation if he confessed to everything' as an indication that leniency was suggested. For those reasons, the Motion is allowed." (Emphasis added.)

The trial court also entered a written order on May 17, 1979, which stated that the *Ruegger* case "requires the Court, while the sanction is severe, to allow the Motion to Suppress." It is from this order that the State appeals.

● 1 The State contends that the trial court erroneously relied on the police officer's promise of leniency as mandating suppression of the confession. The State argues, and defendant agrees, that the promise is only one factor which should have been considered by the trial court in determining whether, under the totality of the circumstances, the confession was given voluntarily. However, the parties disagree over which test was applied and the results emanating from each. It is clear in this State that the totality of the circumstances is the proper test in a case such as this. *People v. Prude* (1977), 66 Ill. 2d 470, 475, 363 N.E.2d 371, *cert. denied* (1977), 434 U.S. 930, 54 L. Ed. 2d 291, 98 S. Ct. 418; *People v. Simmons* (1975), 60 Ill. 2d 173, 179, 326 N.E.2d 383; *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.

"'In short, the true test of admissibility is that the confession is made freely, voluntarily and without compulsion or inducement of any sort.' [Citations.] And, of course, whether the confession was obtained by coercion or improper inducement can be determined only by an examination of all of the attendant circumstances." *Haynes v. Washington* (1963), 373 U.S. 503, 513, 10 L. Ed. 2d 513, 521, 83 S. Ct. 1336, 1343.

It is undisputed that Officer Myers told defendant he would recommend the minimum term of imprisonment to the State's Attorney. However, the existence of such a statement does not *ipso facto* mean that a subsequent confession was made as a result of that promise. The law, as well as common sense, counsels us otherwise.

The facts indicate that defendant was 21 years of age at the time of this incident and had a 10th-grade education. He could read and understand the English language. At the time of his arrest for driving with a revoked license, he was on parole. He had previously been arrested on numerous occasions, and had spoken in the past with Officer Myers on approximately 50 separate occasions, half of which involved criminal interrogation. Officer Myers testified that it was his usual procedure to read one's *Miranda* rights to an individual about to be interrogated and that this practice had been followed with defendant in the past. Moreover, between the time of his arrest and giving of his statement, defendant had been given his *Miranda* rights three different times.

While the precise time lapse between the promise of the recommendation of leniency and the statement does not appear in the record, Officer Myers testified that he and defendant arrived at the Hartford Police station in time for dinner on January 22, 1979, between 4:30 and 5:30 p.m. The offer of leniency, which was conditioned by Myers' statement "that we were not the State's Attorneys office, what they did was entirely up to them," was made after defendant threw his supper in the toilet. Subsequently, Officer Myers left the station to answer a call and defendant was visited by his girl friend. Defendant did not give his statement until 8:10 p.m. This evidence belies the assertion by the appellate defenders that the promise of leniency preceded defendant's statement by only 10 minutes.

We are presented with a rather youthful defendant who has had protracted exposure to law enforcement officials and procedures. While in custody on the dates in question, he was well fed, allowed to sleep, suffered no physical abuse, appeared in good health but was taken to the hospital upon request, was allowed to use the telephone, and was accorded numerous visits by his girl friend. He was given his *Miranda* rights numerous times prior to giving his statement but never requested to see an attorney. Moreover, the officer working on the case was not callous but friendly toward and exhibited a genuine interest in the defendant and his plight. That defendant insisted on speaking with Officer Myers on numerous occasions, rather than another officer, is evidence of this.

Yet, the trial court suppressed the confession and failed to consider all of the aforesaid circumstances, as well as whether the taint "of any possible improper inducement was so attenuated that it could not serve to make the statement involuntary, especially where there were numerous other circumstances clearly indicating that the confession was freely given. [Citation.]" (*In re J. A. G.* (1979), 75 Ill. App. 3d 177, 182, 393 N.E.2d 1207.) The trial court's reliance upon *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 336 N.E.2d 50, for its holding that the offer of leniency per se necessitated the suppression of defendant's confession, was misplaced. *Ruegger* held that such an offer, when viewed with all the other factors to be considered, could properly lead to the conclusion that a confession was involuntarily given and should be suppressed. The court concluded that such a finding on the particular facts presented was not contrary to the manifest weight of the evidence. However, we cannot so hold in the case at bar.

■■ We believe the trial court applied the incorrect test for determining the voluntariness of a confession when it concluded that it was "required" and "directed" to suppress defendant's confession based on the *Ruegger* case. The trial court's reference to the "totality of all things" earlier in the hearing when ruling on an objection, does not persuade us that the proper

test was ultimately applied, for the clear ruling at the conclusion of the hearing forecloses such a finding. Our review of the record indicates no evidence that the promise of leniency induced in the slightest way the defendant's decision to confess. Therefore, we reverse the order of the trial court suppressing the statement of defendant and remand with directions to enter an order denying the motion to suppress.

Reversed and remanded with directions.

KARNS and SPOMER, JJ.; concur.