THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JEFFREY LYNN WRIGHT, Defendant-Appellant.

Fifth District   No. 5—83—0515

Opinion filed September 20, 1984.

Robert L. Carter, of Alton, for appellant.

Donald W. Weber, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Karen L. Stallman, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:

At issue in the instant appeal is whether the trial court erred in refusing to suppress the defendant's confession after finding that the defendant had been promised leniency prior to making that confession. In view of the totality of circumstances surrounding the confession, we find no error in the trial court's ruling.

The defendant was arrested around 10:30 a.m. on August 11, 1983, and charged with the murder and armed robbery of Alton cab driver Clarence Emery. A codefendant, D.C. Clark, was also arrested on that date. During the course of the day, the defendant was interrogated and gave two written statements and one video-taped statement in which he accused codefendant D.C. Clark of shooting Emery. Clark also gave a statement, which differed from the defendant's in that he said that the defendant had shot Emery. To help resolve this inconsistency, both the defendant and Clark were given polygraph examinations at the Alton Police Department.

As the defendant was being returned to his cell following the exam, the defendant asked Detective David Whipple if the police really had codefendant Clark in custody. Detective Whipple showed Clark to the defendant through an opening in Clark's cell door. When the defendant and Detective Whipple got back to the defendant's cell, the defendant stated that he wanted to talk. He told Whipple, however, that he was worried about getting the death penalty and about D.C. Clark's making a deal to testify against the defendant and "getting off without being prosecuted." When asked if he could guarantee that this would not happen, Detective Whipple stated that he could make no guarantees but that he would get someone from the State's Attorney's

office to talk with the defendant.

Whipple then left the defendant and returned with assistant State's Attorney Randy Massey, who identified himself and read the defendant his *Miranda* rights. The defendant indicated that he understood his rights and wanted to make a truthful statement about the killing of Emery. The defendant asked Massey if he could guarantee that the defendant would not be given the death penalty, and Massey stated that no such guarantee would be made. The defendant then asked if Massey could guarantee that codefendant Clark would be prosecuted along with the defendant and would not be allowed to "make a deal" whereby he would receive probation. Massey assured the defendant that codefendant Clark would be prosecuted on the same charges as the defendant and that, if he were convicted, the State would not recommend probation.

Following this discussion the defendant made a third written statement at 6:35 p.m. in which he admitted that he had been the one who shot Emery. He read this statement in a second video-taped interview conducted at approximately 7:25 p.m. During this interview assistant State's Attorney Massey asked why the defendant had requested to speak to him. The defendant responded:

> "[Defendant] Wright: Because I wanted to be, I know I'm involved in ths crime and I told everything that happened in the statement, but I wasn't involved in this crime by myself and I want to make sure that the other person that was with me is prosecuted right along with me.
>
> Massey: O.K. Is that what you asked me to guarantee you when you asked to speak to me?
>
> Wright: Yes.
>
> Massey: O.K. Now, I explained to you at that time that there were no other guarantees being made to you under any circumstances. Do you understand that?
>
> Wright: Yes.
>
> Massey: And you voluntarily made a statement anyway?
>
> Wright: Yes.
>
> Massey: The agreement was that we would prosecute all people involved in this offense and that we would recommend penitentiary time for all people who were convicted of this offense.
>
> Wright: Yes.
>
> Massey: That includes you and your co-defendant.
>
> Wright: Yes.
>
> Massey: No other guarantees were made concerning any other type of sentence or any other type of situation in this

case. Is that correct?

Wright: Correct."

After the interview was completed, the video tape was viewed by several people in the State's Attorney's office. At 8:25 p.m. a third video-taped statement was made in which Assistant State's Attorney Massey explained:

"We have since [the time of the previous video-taped statement] reviewed [that statement] and we have become aware that there is a portion of that tape which may possibly be misunderstood or misconstrued at a later time. The purpose of asking you to come back here now is to explain exactly the situation was [sic] and is now so that there can be no misunderstanding at a later date."

Massey then asked the defendant:

"Massey: You had said earlier that you had asked me to come back and speak to you concerning this case. Is that correct?

[Defendant] Wright: Correct.

Massey: At that time you asked me to make some guarantees to you, is that correct?

Wright: Yes.

Massey: At that time, did I make any guarantee at all concerning the disposition of your case?

Wright: Not at that time.

Massey: Did I at any time?

Wright: No.

Massey: What was the guarantees [sic] that I made to you?

Wright: You said my co-defendant would be prosecuted along with me and that if he was to be found guilty, he would be sentenced to the Department of Corrections as I would.

Massey: O.K., yeah, in the earlier statements, the video-taped statements that you gave, I referred to a penitentiary sentence, is that correct?

Wright: Correct.

Massey: Did you understand that at that time I was referring to your co-defendant which is what was intended.

Wright: Correct.

Massey: The guarantee that I made you did not involve any guarantee at all as to anythings [sic] you might receive. Is that correct?

Wright: Correct."

The defendant subsequently filed a motion to suppress his confession, and a hearing was held on the motion. In making its ruling denying the motion, the court found that the State had agreed to prosecute

codefendant Clark in return for the defendant's statement. The court further found, contrary to the State's position that no promises had been made to the defendant regarding the disposition of his own case, that the State's Attorney's office had led the defendant to believe that, upon his giving a full and truthful statement, the State would recommend a penitentiary sentence for the defendant and would not seek the death penalty. Notwithstanding its ruling, however, that a binding agreement had been reached barring the State from seeking imposition of the death penalty, the court concluded that the defendant's confession was voluntary and was not induced by the promises made to him. As a basis for this finding, the court noted that it was the defendant who asked to see if codefendant Clark was in custody and who actually initiated the discussions with the State's Attorney's office. Thus, the court stated, it did not appear that the defendant's will had been overborne by improper techniques on the part of the State or that unsolicited promises had been made "to coax a statement from an unwilling suspect."

Following denial of the motion to suppress, the defendant was found guilty, in a nonjury trial, of murder and armed robbery. He was subsequently sentenced to concurrent terms in the penitentiary of 80 years on the murder conviction and 30 years on the armed robbery conviction.

■ On appeal from these convictions, the defendant asserts initially that an agreement had been reached with Assistant State's Attorney Massey that the State would forego seeking the death penalty in exchange for the defendant's confession. The trial court's ruling was indeed predicated on its finding of such an agreement, and the State makes no issue of this on appeal. Despite the ambiguity reflected in the record, then, as to whether the State promised not to seek the death penalty or whether it promised only to prosecute codefendant Clark on the same charges as the defendant, we will presume for purposes of this appeal that the promise was as found by the trial court.

■■ From a review of the record we find no merit in the defendant's contention that the trial court erred in finding that the defendant's confession was voluntary following the State's promise of leniency. It is well settled that a confession is not rendered involuntary merely because promises or suggestions of leniency have been made. (*People v. Baine* (1980), 82 Ill. App. 3d 604, 403 N.E.2d 57; *People v. J.A.G.* (1979), 75 Ill. App. 3d 177, 393 N.E.2d 1207.) Rather, such a promise is only one factor to be considered in determining whether, in the totality of circumstances, the defendant's confession was voluntary. (*People v. Baine* (1980), 82 Ill. App. 3d 604, 403 N.E.2d 57.) The test in

making such a determination is whether the confession was given without compulsion or inducement that would overcome the defendant's will (*People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 508; *People v. Rogers* (1984), 122 Ill. App. 3d 384, 461 N.E.2d 511), and a trial court's finding in this regard will not be reversed unless it is contrary to the manifest weight of the evidence. *People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 511; *People v. Noe* (1980), 86 Ill. App. 3d 762, 408 N.E.2d 483.

■ The trial court here specifically found that the defendant's confession was not induced by the promises made by the State but that these so-called inducements were actually conditions originated and tendered by the defendant in return for which he was willing to give a truthful statement. Although, as the defendant notes, he expressed his concerns about the death penalty to Detective Whipple and agreed to make a statement only after meeting with Assistant State's Attorney Massey, this is not sufficient to show that his confession was induced or compelled by the State's promise of leniency. Rather, the fact that the defendant sought the promises made to him by the State indicates that his confession was voluntary. Since the defendant initiated the discussions and proposed the terms under which he would render his confession, the trial court could properly find that the defendant's will was not overcome at the time of his confession but that his confession was a product of free choice.

■■ ■ Because of the initiative taken by the defendant here in making his confession, this case is unlike those cited by the defendant in which promises of leniency were made to coax a confession from an unwilling suspect. (*Cf. People v. Koesterer* (1976), 44 Ill. App. 3d 468, 358 N.E.2d 295 (defendant's confession, after repeated urging by her parents, attorney and the police, found to have been prompted by the State's promise not to oppose a recognizance bond if defendant "cooperated fully"); *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 336 N.E.2d 50 (defendant found to have been compelled to make statement by officer's indefinite promise to "go to bat for him"); *People v. Jones* (1972), 8 Ill. App. 3d 849, 291 N.E.2d 305 (defendant's statement and grand jury testimony found to have been induced by State's offer of probation).) We likewise find distinguishable the case of *People v. Overturf* (1979), 67 Ill. App. 3d 741, 385 N.E.2d 166, in which the defendant's confession was found to be involuntary because rendered under the mistaken belief that the State's promise of leniency, made in a plea bargaining situation, extended to the crime in question. In the instant case any confusion about the extent of the "bargain" between the defendant and the State rested with the State, and there is no indica-

tion that the defendant received less than he had expected when he negotiated the conditions under which he would make his confession.

The record here amply supports the trial court's denial of the defendant's motion to suppress his confession, and we accordingly affirm the defendant's conviction based upon that confession.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.