THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JERRY SHAW, Defendant-Appellee.

First District (4th Division)   No. 1—87—2678

Opinion filed March 16, 1989.

McMORROW, J., dissenting.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry

1092

and Lynda A. Peters, Assistant State's Attorneys, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (Thomas N. Swital, Assistant Public Defender, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The defendant, Jerry Shaw, was charged with attempted murder and three counts of aggravated battery arising from an incident in which he allegedly put paint thinner in his infant son's milk bottles. Following his arrest, the defendant made both oral and written statements which formed the substance of a pretrial motion to suppress evidence. The trial court suppressed the statements based on its finding that they were induced by a police officer's promise that the defendant could get help in the form of psychiatric counseling if he were found guilty. The State has appealed, contending that the trial court's suppression of the statements was manifestly erroneous because it failed to consider the totality of the circumstances surrounding the making of the statements.

Chicago police officer Robert Loughran was the sole witness to testify at the hearing on the motion to suppress. Loughran stated that he and his partner interviewed the defendant at 10:30 p.m. on July 3, 1986. The defendant was advised of his *Miranda* rights and indicated that he understood them. In response to Loughran's inquiry, the defendant stated that he was willing to answer questions at that time.

The defendant was then taken to a different interview room where Loughran had two or three conversations with him between 10:30 p.m. and 11:30 p.m. Each of these conversations lasted between 5 and 10 minutes. The defendant never indicated that he was unwilling to talk to the police, and Loughran testified that he neither threatened the defendant nor made any promises to him during those conversations.

During an interview which occurred at 11:40 p.m., the defendant asked Loughran what would happen to him if he were found guilty. Loughran testified that he responded to the defendant's question by explaining the sentencing alternatives "from the misdemeanor level all the way up to a felony level." He emphasized, however, that the sentencing decision was not in the hands of the police but was instead "basically up to the Judge." Loughran also told the defendant that "there was a possibility of felony probation involved." In response to

the defendant's request for further explanation, Loughran stated that "it was an order of Court of counseling. There is an order of Court on felony probation he would not be locked up. He would be on probation and through the courts." Loughran testified that when the defendant asked further questions about counseling, Loughran repeatedly explained that a judge would make the final decision. At the conclusion of this interview, the defendant agreed to give a statement. A police report prepared by Loughran contained the following statement: "After approximately one hour of periodically interviewing [the defendant], he asked that if he did do what he is accused of doing, he could get help. When told that he could get—probably get help through the courts, he related the following ***."

The defendant then gave a written statement to an assistant State's Attorney. According to Loughran, there was no conversation concerning "help or help through the courts" at that time. Before signing the statement, however, the defendant requested that the following sentence be added: "Jerry Shaw stated he is sorry this happened and that he wants help for himself and the police told him he can get help." The assistant State's Attorney did not question the defendant about the nature of the help referred to in the added sentence.

Loughran then testified that the defendant was offered coffee and allowed to use the bathroom, that he did not request to use the telephone or to contact an attorney and that he did not appear to be under the influence of drugs or alcohol.

At the conclusion of the hearing the trial court granted the defendant's motion to suppress, stating its reasons as follows:

"The test of the admissibility of the confession, the confession is made freely and voluntarily without compulsion or inducement of any sort. The Court finds that in this case the defendant stood mute until the youth officer made a promise to the defendant to get help, the promise which is articulated clearly in the statement.

The police told him he can get help, that coupled with the youth officer's explanation of misdemeanor sentencing, probation by the Court, the defendant spoke only after the promise was made. The police officer's report which clearly indicates a question by the defendant as to whether or not he could get help, the statement by the officer concerning the help that he would probably get followed by the defendant beginning to talk, the Court finds the defendant made a statement which was induced by promise of help.

The statement of providing treatment rather than punishment, I read the promise of treatment rather than punishment, accordingly, the motion to suppress the statement is sustained."

The State has appealed, contending that the trial court erred in relying upon the promise of help as the single dispositive factor which required suppression of the defendant's statement. The State maintains that the totality of the circumstances surrounding the making of the statement establishes that it was made voluntarily.

■■■ The admission into evidence of a confession which was not voluntarily made constitutes a violation of the defendant's right to due process of law. (*Haynes v. Washington* (1963), 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336; *People v. Noe* (1980), 86 Ill. App. 3d 762, 408 N.E.2d 483.) In determining whether a statement was voluntarily made, the court must ascertain whether the defendant's will was overborne at the time he made the statement, or whether the statement was made freely and voluntarily without compulsion of any sort. (*People v. Veal* (1986), 149 Ill. App. 3d 619, 500 N.E.2d 1014.) The totality of the circumstances surrounding the making of the statement must be considered in arriving at this determination. (*People v. Martin* (1984), 102 Ill. 2d 412, 466 N.E.2d 228.) These circumstances include such factors as whether the *Miranda* warnings were given, the presence of threats or physical coercion, whether the defendant was promised leniency, the length and intensity of the interrogation and the age, experience and physical condition of the defendant. (*People v. Noe* (1980), 86 Ill. App. 3d 762, 408 N.E.2d 483.) A confession must be proved voluntary by a preponderance of the evidence, and the trial court's finding on the issue of voluntariness will not be reversed unless it is against the manifest weight of the evidence. (*People v. Veal* (1986), 149 Ill. App. 3d 619, 500 N.E.2d 1014.) A promise of leniency will not necessarily mandate a finding that the defendant's statement was involuntary; rather, the ultimate question is whether under the totality of the circumstances the defendant's will was overborne. *People v. Veal* (1986), 149 Ill. App. 3d 619, 500 N.E.2d 1014.

■■ In the case at bar, Officer Loughran's testimony established that before giving a statement the defendant asked what would happen to him if he were found guilty. Loughran responded by explaining the sentencing alternatives available, from the misdemeanor level to the felony level. When the defendant expressed interest in the possibility of felony probation, Loughran explained that under that sentencing alternative the defendant would not be locked up and could receive help in the form of counseling through an order of the court.

Loughran testified that he repeatedly told the defendant that the final decision as to whether counseling would be available was in the hands of a judge. However, in his police report, Loughran indicated that the defendant made his statement after being told that he could "probably" get help through the court. After making a written statement, the defendant requested the assistant State's Attorney to add the following sentence: "Jerry Shaw stated he is sorry this happened and that he wants help for himself and the police told him he can get help." Loughran's testimony further established that the defendant was advised of and indicated he understood his constitutional rights, that he was not threatened or coerced and was in good physical condition, that he was offered coffee and allowed to use the bathroom and that the interrogation was neither lengthy nor intense.

Based upon Loughran's testimony, the trial court found that the promise of help overbore the defendant's will and induced him to make a statement. The court accordingly suppressed the statement as having been involuntarily made. The State contends that the court's finding of involuntariness was against the manifest weight of the evidence because it was based upon a single factor—the promise of help—rather than upon a consideration of the totality of the circumstances. In support of this contention, the State cites *People v. Veal* (1986), 149 Ill. App. 3d 619, 500 N.E.2d 1014, *People v. Noe* (1980), 86 Ill. App. 3d 762, 408 N.E.2d 483, and *People v. Baine* (1980), 82 Ill. App. 3d 604, 403 N.E.2d 57.

The cases cited by the State stand for the proposition that the trial court must consider the totality of the circumstances in determining whether a statement was voluntarily made. We do not interpret them, however, as saying that there can never be a case in which one factor so overwhelmingly overshadows the others as to support, in and of itself, a finding of involuntariness. In the case at bar Officer Loughran testified as to the giving of the *Miranda* warnings, the length and intensity of the interrogation, the physical condition of the defendant and the manner in which he was treated by the police. According to Loughran's testimony, these factors favored the State's position and there is no reason to believe that the trial court would have found otherwise had it expressly mentioned them in its finding. The court nevertheless found that the circumstances surrounding the police promise of help, including Loughran's explanation of sentencing alternatives, his statement that the defendant would "probably" receive help and the defendant's express reliance on the promise as evidenced by his addition to the written statement, showed that his will was overborne at the time the statement was made. In our view, the

trial court could well have found that the specific statement that the defendant could probably get help through the court served to lessen the effectiveness of Loughran's warnings that the final decision was in the hands of a judge. Based on the record before us, we cannot say that the trial court's finding was against the manifest weight of the evidence.

Moreover, the cases relied upon by the State are factually distinguishable from the instant cause. In each case, the reviewing court stated that although a promise of leniency or help was made to the defendant, the promise did not influence the defendant's decision to confess. In *People v. Veal* (1986), 149 Ill. App. 3d 619, 500 N.E.2d 1014, the trial court made a specific finding that it was not the promise of leniency that induced the defendant's confession, but rather the fact that his commission of the offense had been discovered combined with a guilty conscience. The court based this finding in part on the fact that the defendant indicated in his written statement that he had not been promised leniency of any kind in return for his statement. A lack of reliance on the promise of help was also noted in *People v. Noe* (1980), 86 Ill. App. 3d 762, 766, 408 N.E.2d 483, 486, where the court stated that "it is significant that in the instant case when defendant was asked why he talked to police, he did not mention the suggestions of psychiatric help. He testified he talked to them because he was afraid of losing his wife." Finally, in *People v. Baine* (1980), 82 Ill. App. 3d 604, 610, 403 N.E.2d 57, 61, the appellate court stated that "[o]ur review of the record indicates no evidence that the promise of leniency induced in the slightest way the defendant's decision to confess." Unlike the facts of *Veal, Noe* and *Baine,* the instant defendant's reliance on the police promise of help is clearly reflected in his express mention of the promise in his written statement.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON, J., concurs.

JUSTICE McMORROW, dissenting:

The trial court sustained a motion to suppress defendant's confession on the basis that the confession was involuntary because it was induced by a promise of help. Defendant made oral and written confessions that he mixed paint remover with the milk in his 14-month-old baby's bottle, knowing that it would be fed to the child and in fact was ingested by the child. The trial court found that the defendant's

confession was based on a promise of help in the form of treatment rather than punishment. I respectfully dissent because I conclude that the interrogating officer's remarks to the defendant preceding his confession cannot reasonably be construed as a promise of help or leniency to the defendant in exchange for his confession. In the instant case, the record discloses *no* evidence of any promise of any kind which prompted a confession. In addition, the evidence surrounding defendant's confession in this case clearly demonstrates that defendant's will was not overborne in any way, and that his confession was voluntary and not induced by any promise of leniency.

Officer Loughran was the only witness who testified in the hearing on the motion to suppress. His undisputed testimony showed that shortly after his assignment to investigate the complaint of aggravated battery against the child, the first time he saw the defendant, who was married and 25 years of age, was at 10:30 p.m. in a police station interview room. The officer told defendant that he and his partner were investigating an aggravated battery. Officer Loughran read defendant his *Miranda* rights and defendant said he understood those rights and was willing to answer questions. Defendant was then taken to a different interview room in the police station. During the following hour, Officer Loughran spoke with the victim's mother and with a brother-in-law. During this time the officer also spoke to defendant briefly on two or three occasions to inquire if defendant needed food, drink, or other essentials, but the officer did not question defendant regarding the crime, make him any promises, or talk to defendant in a threatening manner. The defendant did not indicate that he was unwilling to talk to the officers; defendant was alert and responsive and did not appear to be under the influence of drugs or alcohol.

Officer Loughran returned to question defendant at approximately 11:30 p.m. The officer first "explained to [defendant] that [the officer] had talked to a couple of people who were involved with the case and [that the officer] had additional information." This information was that the police "could put [defendant] in the kitchen where the bottles were located in the refrigerator, and [that the police] had statements that were made stating that it [*sic*] was clinking of bottles and what have you in the kitchen and that he [defendant] was the only one present." Defendant then asked Officer Loughran "what would happen if he was found guilty of this." The officer explained the range of sentences which could be imposed if defendant were convicted. The officer further responded that the punishment was "out of our hands completely. It was basically up to the Judge." After this conversation

about the court system and the sentencing alternatives, which lasted approximately 10 minutes, defendant orally confessed to Officer Loughran his commission of the crime. This oral confession took approximately 20 minutes. The police officer then prepared a written report which stated the following: "After approximately one hour of periodically interviewing him, he asked that if he did do what he is accused of doing, he could get help. When told that he could get— probably get help through the courts, he related the following," and that the defendant thereafter gave an oral confession.

An assistant State's Attorney was then called to the police station. Outside the presence of the defendant, the assistant State's Attorney spoke to witnesses to the crime and then to Officer Loughran. Officer Loughran told the assistant State's Attorney the substance of the defendant's oral confession, that the defendant had asked about various sentences and help he might receive if he were found guilty, and that the officer had explained these to the defendant. Defendant was then given his *Miranda* warnings by the assistant State's Attorney at approximately 1:45 a.m., and made an oral confession to the assistant State's Attorney in the presence of Officer Loughran. Thereafter defendant also gave a written confession to the assistant State's Attorney. Defendant asked no questions about sentence alternatives, felony probation, or psychiatric counseling during these periods of questioning by the assistant State's Attorney. After the defendant signed the written confession, he included at the end of the confession "Jerry Shaw stated he is sorry this happened and that he wants help for himself and the police told him he can get help."

Based upon the foregoing, the trial court found, and the majority agrees, that the defendant's confession was involuntary and predicated upon a promise of help. I disagree.

The record here does not show that the defendant's confession was involuntary because his will was overborne by an interrogating officer's promise that he would receive help or would be given a particular sentence in exchange for that confession. Officer Loughran never promised defendant anything; he did not promise leniency, probation, or psychiatric counseling. The record is replete with Officer Loughran's denial of any sort of promise. Rather, at best, the record shows that in response to defendant's questions regarding forms of punishment if he were found guilty, that Officer Loughran informed defendant of possible sentences, including that he *might* receive felony probation and psychiatric treatment if he were found guilty. The defendant expressed in his confession his unilateral desire that he be given psychiatric counseling, and the police did no more than inform

him that counseling was a possibility, available only if ordered by the court. Viewing the evidence most favorably to defendant, there are no words or conduct which might reasonably be construed as a promise of help. There are no words expressed, implied, or from which an inference could be drawn as indicative of any assurance that defendant would receive help or a particular sentence if found guilty. Officer Loughran unequivocally, repeatedly, and explicitly indicated to the defendant at all times during which they conversed that defendant's sentence or expectation of help or counseling was totally within the control or discretion of the court. The trial court did not question the credibility of Officer Loughran.

As justification for its conclusion that defendant's confession was involuntary, the majority emphasizes that defendant requested that a sentence be added to the written statement he gave to the assistant State's Attorney which said "Jerry Shaw stated he is sorry this happened and that he wants help for himself and the police told him he can get help." The phrase, "the police told him he can get help," was interpreted by the trial court and majority as a promise of help, without which he would not have confessed. In my view, the police telling him that he "can" get help is indicative of a *possibility* of help, rather than a promise of help. Black's Law Dictionary states that the word "can" is "[o]ften used interchangeably with 'may.' " (Black's Law Dictionary 186 (5th ed. 1979).) Defendant did not say that the police told him he *would* get help, but rather merely said the officer told him he "can" get help.

The cases cited by the majority support the conclusion that there was no promise of leniency to render the confession involuntary. Neither the interrogating officer nor the assistant State's Attorney in the case at bar assured the defendant that "nothing will come of this, probably you won't stay overnight and we can get you some help," as in *People v. Veal* (1986), 149 Ill. App. 3d 619, 500 N.E.2d 1014. Nor did the officer or the assistant State's Attorney tell defendant that he would intercede on defendant's behalf and recommend "the lowest" sentence, as in *People v. Baine* (1980), 82 Ill. App. 3d 604, 403 N.E.2d 57. Furthermore, similar to *Veal* and *Baine,* the record here does not show that defendant relied on a promise of leniency that overcame his free will and rendered his confession involuntary.

I am persuaded that *People v. Noe* (1980), 86 Ill. App. 3d 762, 408 N.E.2d 483, upon which the majority also relies, further supports this conclusion. In *Noe,* although the police officer told defendant that professional help was a possibility, the appellate court emphasized that "no definite promises were made [to the defendant], but only vague

suggestions of the possibility of psychiatric help. The possibility of leniency, to be distinguished from psychiatric help, was not even suggested." (86 Ill. App. 3d at 766.) In concluding that the defendant's confession in *Noe* was voluntary, the appellate court concluded that "the vague suggestions of the possibility of psychiatric help in the instant case were not likely to induce an innocent man to confess to the repugnant crimes involved herein." 86 Ill. App. 3d at 767.

The reasoning of the court in *Noe* is equally applicable to the case at bar. The statements of Officer Loughran here were at most vague suggestions that psychiatric help for defendant was a possibility. When considered in the overall context of the circumstances surrounding the defendant's confession, the officer's representations in response to defendant's questions were not likely to induce an innocent man to confess to mixing paint remover with milk in the victim's baby bottle, knowing that it would be fed to the baby and in fact was ingested by the child. See also *People v. Sellars* (1981), 93 Ill. App. 3d 744, 750 (interrogating officers' promise to seek low bond, conditioned on advice that ultimate decision on bond would be that of the judge, held to be an equivocal promise, and "not so coercive as to induce defendant to admit to a crime he did not commit," citing *People v. Carroll* (1977), 50 Ill. App. 3d 946, 365 N.E.2d 1352).

*People v. Harris* (1979), 69 Ill. App. 3d 91, 386 N.E.2d 933, relied upon by the State in this appeal but not considered by the majority, is closely analogous to the case at bar and also demonstrates that the defendant's confession here was not involuntary. In *Harris,* the interrogating officers represented to the defendant, a heroin addict, that a number of programs were available to help with his drug problem. They also incorrectly informed the defendant with respect to a mandatory sentence to be imposed upon conviction of armed robbery. The court rejected defendant's argument that "the interrogating officers' representations regarding the availability of drug treatment programs and their misstatement of the minimum sentence for armed robbery amounted to broken promises of leniency which prevented him from making a knowing and intelligent waiver of his rights." (69 Ill. App. 3d at 93.) The court reasoned that even though defendant was not eligible for sentencing and treatment under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, par. 120.1 *et seq.*) defendant failed to show that he would be denied access to other drug abuse programs. The court observed that the record was devoid of any indication that the officers' statement about the prison term was a material factor in the defendant's decision to make a confession. 69 Ill. App. 3d at 93.

Similar to the circumstances in *Harris,* there is nothing in the record before us to show that Officer Loughran's statements were intended as subterfuge or purposeful misrepresentation, rather than response to defendant's inquiry. There is also nothing in this record to demonstrate that defendant would be denied access to psychiatric counseling if he were convicted. The record shows Officer Loughran repeatedly testified that he made no promises to defendant and repeatedly informed him that the nature of the sentence to be imposed was a decision which had to be made by a court. Although the officer referred to probation as a possible sentence, he never informed defendant that he would receive probation if found guilty. Since defendant's confession makes no reference to the possibility of probation, the record does not indicate that Officer Loughran's reference to probation was a material factor in the defendant's decision to confess. It is undisputed that defendant was not physically abused, threatened, or coerced during questioning, and was given and waived his *Miranda* rights before he asked Officer Loughran about sentencing alternatives if he were found guilty. Defendant was questioned for only a short period of time while being held and was permitted access to food and drink. There is nothing to indicate that defendant was intimidated in any fashion, nor is there any evidence that defendant, who was 25 years old, was suffering from any physical or mental disability at the time he gave his confession. Accordingly, there was no evidence in this case from which the trial court could properly conclude that the defendant's confession was involuntary.

Although I am unable to find anything in Officer Loughran's conversation with defendant that would support a promise of leniency or help, assuming that a promise of leniency were made, such promise is only one of many factors to be considered in the totality of the circumstances attending a defendant's confession. The proper inquiry is whether, on the totality of the circumstances in each particular case, a promise of leniency can be said to have overborne the defendant's will, rendering his confession involuntary. (See, *e.g., People v. Stachelek* (1986), 145 Ill. App. 3d 391, 402, 495 N.E.2d 984; *People v. Eckles* (1984), 128 Ill. App. 3d 276, 470 N.E.2d 623; *People v. Wright* (1984), 127 Ill. App. 3d 747, 469 N.E.2d 351; see generally *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.) The totality of the circumstances, detailed above in Officer Loughran's undisputed testimony, does not justify a finding of involuntariness.

Although the majority recites the rule that a confession must be considered in the context of all the circumstances surrounding the making of a confession, the majority failed to apply this rule to the

facts of the instant case. The majority justifies its failure to consider all of the circumstances attending the defendant's confession in the case at bar by observing that, in this case, "one factor [*i.e.,* the alleged promise of leniency] so overwhelmingly overshadows the others as to support, in and of itself, a finding of involuntariness." (180 Ill. App. 3d at 1095.) In my opinion, the record utterly fails to disclose a promise of leniency, such as to make unnecessary the consideration of other appropriate factors in the determination of the voluntariness of a confession.

Proper application of binding precedent to the facts of this case demonstrates that the interrogating officer, given the circumstances presented here, made no promise of psychiatric help or leniency to the defendant to support a finding of involuntariness. Because the confession was not shown to be involuntary under the totality of the circumstances, I am of the opinion that the trial court's decision was manifestly erroneous, is not supported by the evidence, and should be reversed.