NO. 4-95-0662

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from

          Plaintiff-Appellee,           )    Circuit Court of

          v.                            )    Vermilion County

MARQUIS DEAN ROBINSON,                  )    No. 94CF191

          Defendant-Appellant.          )         

                                        )    Honorable

                                        )    Thomas J. Fahey,

                                        )    Judge Presiding.

_______________________________________________________________

                                     

          JUSTICE KNECHT delivered the opinion of the court:

          Following a jury trial in March 1995, defendant Marquis

Robinson was found guilty of attempt (armed robbery) (720 ILCS

5/8-4, 18-2 (West 1994)); he was acquitted of first degree murder

(720 ILCS 5/9-1 (West 1994)).  In July 1995, he was sentenced to

15 years' imprisonment.  He now appeals, arguing (1) the trial

court erred in refusing to suppress his confession; (2) he was

not proven guilty beyond a reasonable doubt; (3) he was denied a

fair trial by the prosecutor's comments in closing argument; and

(4) the trial court erred in considering the death of the victim

at sentencing.  We affirm.

          The evidence of defendant's guilt at trial consisted

primarily of his confession, which he now contends was coerced. 

Specifically, he claims he would not have made the statement but

for the State's offer of leniency toward his girlfriend, Deanetra

Brigham.  Brigham was arrested at the same time as defendant, and

the police believed she was either involved in the crime or had

purposefully refused to disclose knowledge of the crime.  When

the investigating officer, Officer Keith Garrett of the Danville

city police, informed defendant Brigham was being held and why,

defendant suggested Garrett was just "fucking with her" and pro-

claimed Brigham's lack of knowledge or involvement in the whole

affair.  Defendant then indicated to Garrett he would agree to

make a statement if Brigham was released.  Garrett left the room

and brought Brigham up from the booking area.  She was allowed to

enter the room where defendant was sitting and she was then re-

leased.  Defendant then confessed his involvement in the crime.  

          To be admissible, a confession must be given voluntari-

ly.  People v. Oaks, 169 Ill. 2d 409, 446, 662 N.E.2d 1328, 1344

(1996).  "The test of voluntariness is whether the statement was

made freely, voluntarily and without compulsion or inducement of

any sort, or whether the defendant's will was overcome at the

time he confessed."  People v. Clark, 114 Ill. 2d 450, 457, 501

N.E.2d 123, 126 (1986).  The voluntariness of a confession is

judged by the totality of the circumstances surrounding its mak-

ing.  People v. Melock, 149 Ill. 2d 423, 447, 599 N.E.2d 941, 951

(1992); People v. McDaniel, 249 Ill. App. 3d 621, 634, 619 N.E.2d

214, 225 (1993), aff'd, 164 Ill. 2d 173, 647 N.E.2d 266 (1995). 

Factors affecting the voluntariness of a confession include the

age, education and intelligence of the accused, the duration of

the questioning, and whether he received his constitutional

rights or was subjected to any physical punishment.  Oaks, 169

Ill. 2d at 446-47, 662 N.E.2d at 1344; Melock, 149 Ill. 2d at

447, 599 N.E.2d at 951.  No one factor is dispositive.  Oaks, 169

Ill. 2d at 447, 662 N.E.2d at 1344; Melock, 149 Ill. 2d at 447,

599 N.E.2d at 951.  

          While offers of leniency are also a factor to be con-

sidered (People v. Ruegger, 32 Ill. App. 3d 765, 769, 336 N.E.2d

50, 53 (1975); People v. Shaw, 180 Ill. App. 3d 1091, 1094, 536

N.E.2d 849, 851 (1989)), a confession is not rendered involuntary

simply because such an offer has been made.  See People v. Ander-

son, 225 Ill. App. 3d 636, 641, 587 N.E.2d 1050, 1055 (1992);

People v. Veal, 149 Ill. App. 3d 619, 624, 500 N.E.2d 1014, 1018

(1986); People v. Wright, 127 Ill. App. 3d 747, 751, 469 N.E.2d

351, 354 (1984); People v. Noe, 86 Ill. App. 3d 762, 766, 408

N.E.2d 483, 486 (1980); People v. Baine, 82 Ill. App. 3d 604,

610, 403 N.E.2d 57, 61 (1980).

          When it is the defendant himself who begins bartering

for leniency in exchange for a statement, a claim of coercion

becomes far less credible.  See Wright, 127 Ill. App. 3d at 751,

469 N.E.2d at 353-54.  In Wright, the defendant, charged with

murder, asked a detective whether his codefendant, D.C. Clark,

was in custody.  Upon learning he was, the defendant told the

detective he would be willing to give a statement in exchange for

a promise by the State not to seek the death penalty against him. 

When the State later agreed not to seek the death penalty, the

defendant confessed to the murder.  The trial court, finding

"these so-called inducements were actually conditions originated

and tendered by the defendant in return for which he was willing

to give a truthful statement," concluded the defendant's confes-

sion was entirely voluntary, and the appellate court in Wright

affirmed.  Wright, 127 Ill. App. 3d at 752, 469 N.E.2d at 354.  

          Applying these principles to the present case, the

trial court's finding of voluntariness is not to be against the

manifest weight of the evidence.  See Oaks, 169 Ill. 2d at 447,

662 N.E.2d at 1344 (standard of review is whether finding of

voluntariness is contrary to the manifest weight of the evi-

dence).  All the evidence at trial established it was defendant

who first expressed a willingness to make a statement, and it was

he who set the conditions upon which such a statement would be

made.  Defendant does not contest the evidence on this point,

specifically acknowledging in his brief "[t]here is no dispute

that the [d]efendant indicated to Officer Garrett that if his

girlfriend was not charged then he would talk to them."  Garrett

testified he released Brigham only after defendant made the above

statement.  Defendant initiated and controlled the bargaining

here, so the cases upon which he relies, Ruegger and Shaw, are

distinguishable.

          Not only was it conclusively established no improper

offer of leniency was made in exchange for defendant's confes-

sion, there are no other factors indicative of involuntariness

which weigh in defendant's favor.  Defendant admits as much in

his argument, acknowledging "many of the [other] factors indicat-

ing involuntariness are not present" in this case.  Defendant was

adequately informed of his rights prior to waiving them.  The

questioning was brief, lasting just a little over one hour, and

there was no evidence of physical coercion.

          Defendant next contends he was not proved guilty of

attempt (armed robbery) beyond a reasonable doubt.  He argues

there was little evidence introduced against him, other than his

confession, which established his guilt.  The State seems to

agree with this assessment of the evidence but argues such evi-

dence was sufficient to find defendant guilty beyond a reasonable

doubt.  The testimony at trial revealed the following.

          Garrett testified to the substance of defendant's con-

fession.  According to defendant's confession, the following

events transpired on April 23, 1994.  Defendant, Izell Pittman,

Cortez Brown, Quonie and George Barney, and Spurgeon Barber de-

cided to go to Contrel Grigsby's apartment in Danville and rob

Grigsby, who they believed was a drug dealer.  Pittman and Brown

went in one car, while defendant, the Barneys, and Barber went in

another.  Pittman was to enter first and determine if there were

drugs and money inside.  Pittman went inside, and defendant and

the others were allowed entrance shortly thereafter.

          Once inside, defendant grabbed Grigsby, shoved him

backward, and struck him with the gun.  He demanded Grigsby give

him the "stuff," and then went through his pockets.  Finding

nothing, he next went upstairs and began rummaging around.  After

hearing a gunshot, he ran downstairs and out to the car with the

Barneys and Barber.  They then went back to defendant's residence

at 705 Chandler Street.

          Defendant admitted he was wearing a hooded sweatshirt

on the night in question and was carrying a .45-caliber weapon. 

He told Garrett he and several of the others had worn either dust

masks or surgical gloves or both.  The masks, gloves, and defen-

dant's hooded sweatshirt were placed in the trash at the Chandler

Street address.  A search warrant executed several days after the

robbery produced surgical latex gloves from a trash can behind

the house at Chandler Street, as well as shell casings matching

those found at the crime scene.

          In addition to defendant's confession, however, a vari-

ety of other evidence supported the jury's finding of guilt. 

Alvin Jones, a witness at Grigsby's apartment on the night in

question, testified the men who entered the apartment wore dust

masks and one wore a hooded sweatshirt like the one defendant

admitted he was wearing.  His testimony corroborated much of

defendant's statement to Garrett, including the fact three men

entered the apartment, one at first and two later.  Jones testi-

fied Pittman was definitely one of the men who entered the apart-

ment.

          Defendant and Brigham testified on defendant's behalf. 

Both claimed to have been at a bar called Harold's Cigar Store

(Harold's) prior to the shooting, driving over together to the

site of the shooting only after they had heard about it.  Brigham

was thoroughly impeached by the State's witness Steve Wilson, a

Danville police officer.  At trial, Brigham first admitted having

requested to speak with Wilson, whom she considered a friend,

following the shooting.  She then, however, denied making each

and every statement Wilson would later testify she made when they

met.  Brigham's story on April 29 concerning the events of April

23 was significantly different than the story she (and defendant)

gave at trial.

          Wilson testified regarding the substance of the conver-

sation he had with Brigham on April 29.  Brigham told Wilson she,

defendant, Barber, the Barneys, Pittman, and Brown had all been

at 705 Chandler Street on April 23.  Everyone except Brigham

left, supposedly to go to Harold's, and when they returned to

Chandler Street later that night, she overheard the men talking

about a shooting in the Beeler Terrace housing projects (where

Grigsby lived).  Given the glaring inconsistencies between

Brigham's April 29 statement to Wilson and her trial testimony,

the jury would have been justified in disbelieving the testimony

of defendant's girlfriend.

          Defendant was also persuasively impeached at trial. 

After extensive questioning on cross-examination as to who else

was in Harold's with him on the night of the robbery, defendant

finally gave up the names Andre Parchman and Donovan Parchman,

two brothers with whom defendant was acquainted.  Andre and his

brother Donovan both testified in rebuttal for the State.  Both

admitted knowing defendant, and both definitively testified they

had not been in Harold's on the night of the shooting at Beeler

Terrace.  In fact, both testified they frequented Harold's and

had never seen defendant in Harold's on any prior occasion.  The

jury was therefore justified in rejecting defendant's trial tes-

timony as well.  When viewing all of this evidence in the light

most favorable to the prosecution, we conclude a rational trier

of fact could have found defendant guilty of attempt (armed rob-

bery) beyond a reasonable doubt.  See People v. Campbell, 146

Ill. 2d 363, 374, 586 N.E.2d 1261, 1266 (1992) (stating the stan-

dard of review where defendant challenges the sufficiency of the

evidence).

          Defendant next asserts he was denied a fair trial when

the prosecutor made the following remarks in closing argument

prior to defendant's acquittal of first degree murder:

               "So we come to the final and end defense

          and this is something I would suggest that

          Mr. Gerlach [(the other prosecutor)] and I

          have always been worrying about from the

          first day.  Who cares?  This is a drug dealer

          from Detroit.  He's dead.  The world is bet-

          ter for it.  Okay.  Let's give them the at-

          tempted armed robbery not the first degree

          murder.  We'll punish him, because he was

          doing something wrong, but he just got a drug

          dealer."

Defense counsel objected to this argument.  The trial court sus-

tained the objection and then admonished the jury:

               "The jury has heard the evidence.  Clos-

          ing arguments should be confined to the evi-

          dence and reasonable inferences to be drawn

          from the evidence.  And anything not based

          upon the evidence should be disregarded."

Defendant acknowledges he was acquitted of first degree murder as

suggested by the prosecutor's remark but argues the remark dimin-

ished the possibility of acquittal on the attempt (armed robbery)

charge.

          A prosecutor is permitted wide latitude in closing

argument.  People v. Enis, 163 Ill. 2d 367, 407, 645 N.E.2d 856,

874 (1994).  Improper comments by a prosecutor usually do not

amount to reversible error unless they result in substantial

prejudice to the accused.  People v. Johnson, 149 Ill. 2d 118,

145, 594 N.E.2d 253, 267 (1992); People v. Perkins, 247 Ill. App.

3d 778, 786, 617 N.E.2d 903, 908 (1993).  A defendant must demon-

strate the prosecutor's comments "so infected the entire trial

proceedings that they denied him a fundamentally fair trial." 

People v. Jones, 156 Ill. 2d 225, 247, 620 N.E.2d 325, 334

(1993).  The act of sustaining an objection and admonishing the

jury will usually cure any resulting prejudice.  People v. Moore,

171 Ill. 2d 74, 105-06, 662 N.E.2d 1215, 1229 (1996).

          Assuming, arguendo, the prosecutor's comments here were

improper, defendant has failed to demonstrate substantial preju-

dice as a result of the remarks.  The jury did exactly what the

prosecutor was urging them not to do.  Further, the trial court

sustained defendant's objection and then admonished the jury to

consider the evidence only, thereby curing any potential preju-

dice.    

          Finally, defendant argues the trial court erred in

considering defendant's role in the killing of Grigsby at his

sentencing for the attempt (armed robbery) conviction.  He argues

his acquittal of first degree murder should have precluded the

trial court from considering that charge in sentencing defendant. 

The trial judge sentenced defendant to 15 years' imprisonment,

the maximum term permitted by law, and, in doing so, indicated he

considered defendant's accountability in the murder in aggrava-

tion.

          Evidence of other criminal conduct is admissible at

sentencing, even though a defendant has previously been acquitted

of that conduct.  See People v. Jackson, 149 Ill. 2d 540, 549-50,

599 N.E.2d 926, 930 (1992) (noting in dicta a majority of juris-

dictions permit introduction of evidence of other criminal con-

duct at sentencing regardless of defendant's acquittal of that

conduct); In re Nau, 153 Ill. 2d 406, 426, 607 N.E.2d 134, 143-44

(1992) (evidence of criminal conduct admissible at subsequent

civil commitment hearing despite previous acquittal of the crimi-

nal charge, following Jackson); see also United States v. Watts,

No. 95-1906 (U.S. January 6, 1997) (holding sentencing courts may

consider evidence of conduct or charges of which a defendant was

acquitted); but see People v. Damnitz, 269 Ill. App. 3d 51, 62-

63, 645 N.E.2d 465, 473-74 (1994).  The burden of proof at sen-

tencing is lower than proof beyond a reasonable doubt, and an

acquittal does not conclusively establish the defendant did not

commit the acts alleged.  Nau, 153 Ill. 2d at 426, 607 N.E.2d at

143-44; Jackson, 149 Ill. 2d at 550, 599 N.E.2d at 930.  The evi-

dence of prior conduct must, however, be relevant and reliable. 

Jackson, 149 Ill. 2d at 549, 599 N.E.2d at 930.  "Such evidence

*** should be presented by witnesses who can be confronted and

cross-examined *** and the defendant should have an opportunity

to rebut the testimony."  Jackson, 149 Ill. 2d at 548, 599 N.E.2d

at 930.  

          In light of these principles, the trial court justifi-

ably took into account the death of Grigsby in sentencing defen-

dant on the attempt (armed robbery) conviction.  As the trial

court noted, there was sufficient evidence of defendant's com-

plicity in the killing to have justified a first degree murder

conviction on the theory of accountability.  Relevant and reli-

able evidence was presented as to defendant's role in the murder

of Grigsby.  Defendant was given every opportunity to confront

and cross-examine witnesses in defending his first degree murder

charge.  His acquittal hardly established his innocence of the

crime, considering he was convicted of attempt (armed robbery)

during the course of which a murder occurred.  

          Defendant does not discuss Jackson or Nau.  Rather, he

relies on People v. Gant, 18 Ill. App. 3d 61, 309 N.E.2d 265

(1974).  Gant is readily distinguishable.  The complaining wit-

ness in Gant died two days after being robbed by the defendant,

but he was not charged with any offense related to her death. 

The trial judge, believing the defendant's actions were partly

responsible for the complainant's death, took this fact into con-

sideration in sentencing the defendant on his robbery conviction. 

The appellate court in Gant reduced the defendant's sentence,

since he was never charged with the victim's death and "there was

absolutely no evidence adduced at trial which would support" the

trial court's view of his role in her death.  Gant, 18 Ill. App.

3d at 67, 309 N.E.2d at 268.

          In contrast to Gant, there was considerable evidence of

defendant's role in the victim's death here.  Defendant was

charged and prosecuted for the crime, although he was eventually

acquitted.  Defendant does not contend his sentence exceeds the

maximum permitted by law.  We find nothing improper about

defendant's sentence.  

          The judgment of the trial court is affirmed.

          Affirmed.

          STEIGMANN, P.J., and McCULLOUGH, J., concur.