THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACQUELINE PERKINS, Defendant-Appellant.

Fourth District   No. 4—92—0225

Opinion filed July 30, 1993.

Daniel D. Yuhas, Charles M. Schiedel, and John J. Hanlon, all of State Appellate Defender's Office, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Jacqueline Perkins, appeals her conviction of four counts of aggravated battery and one count of mob action. Defendant contends an instruction tendered to the jury with respect to one count of aggravated battery was confusing, misleading, and misstated the burden of proof. Defendant requests this court to vacate her conviction on that count of aggravated battery. Defendant additionally alleges the statements made by the prosecution in closing argument deprived her of a fair trial. She requests all of her convictions be reversed on this basis, and the matter be remanded for a new trial. Although the jury instruction of which defendant complains was not proper, this issue has been waived and the error does not rise to the level of plain error. Nor do we find the defendant was deprived of a fair trial as the result of the prosecutor's comments in closing argument. We affirm.

## I. Facts

Defendant's convictions arise out of her attack of James Hughes, his next door neighbors, Curtis and Connie Vitzthum, and Paul Jepp, a guest of the Vitzthums. Defendant lived on the same block as Hughes and the Vitzthums, and has been involved in a series of disputes with Hughes.

According to the witnesses testifying on behalf of the State, on October 10, 1990, defendant approached Hughes' home and accused

Hughes of breaking windows in her house and threatening her children. Defendant broke one of Hughes' windows with a billy club, raised her hand over her head, and said "take them out." Moments later 10 to 20 young males appeared carrying a variety of objects, including numchucks, steel pipes, bottles, bricks, conduit sticks, baseball bats, and two by fours.

Hughes heard defendant yell "take them out," and was hit in the forehead by an attacker he could not identify. Hughes saw Jepp being attacked, and also saw defendant twisting Connie's arm. Hughes testified the attack ended when defendant stated, "that's enough, let's get out of here." Hughes required stitches for the injury to his head.

Connie heard defendant yell "take him out." Connie saw defendant and two males attacking Curtis. Connie also saw Jepp being beaten with a bat. Defendant struck Connie across the right side of her head with a nightstick, causing Connie to fall to the ground. She may have been struck again by defendant. As she lay on the ground, yelling for her neighbor "Norm" to come and help her, she was struck in the back with a baseball bat. Defendant then grabbed Connie's arm. John Kren, another neighbor, heard Connie yelling "Norm," and saw her being beaten with sticks or pipes. Connie's injuries included a concussion and bruises.

Curtis heard defendant yell "take them out." Curtis was struck on the back, shoulders and hips, and sustained a gash to the forehead. Curtis saw Jepp struck in the head at least twice. Curtis required stitches to the injuries on his head.

Jepp heard defendant yell, "take them out," and saw defendant strike Hughes in the head with her billy club. Jepp saw other individuals striking Hughes and Curtis with pipes and clubs. Jepp also heard defendant state "take him out" to a male carrying a baseball bat, who then struck Jepp. Jepp was struck at least twice in the head and once in the groin with a baseball bat. Jepp received brain surgery, and had between 300 and 400 stitches. Jepp also suffered swelling and bruising as a result of the injuries to his groin area.

In addition to the injuries to people, Hughes' home and a car owned by Hughes' housemate, Sandy Kelly, were damaged.

Officer Scott Kincaid testified he responded to a report of a disturbance at Hughes' home at 9:30 p.m. When he arrived he noticed the windows of the car in the driveway had been broken out, the siding of Hughes' house had been damaged, and two front windows had been broken. He also saw the victims, and stated all of the males were bleeding from lacerations to the head. The victims told Kincaid "Jackie" and approximately 15 young men had been involved in the

incident. Kincaid went to defendant's house, but received no answer after knocking on the door. Kincaid testified Jepp and one other victim were taken away in an ambulance.

According to defendant's testimony, she left her house at approximately 8:15 p.m. to go to a laundromat, leaving her younger brothers and her son in the house. She returned from the laundromat at approximately 10 p.m. Her son told her the police had been at the house, but the children had not opened the door. Defendant noticed some of her windows were broken. At some time after 10 p.m., she went to Hughes' house to accuse him of breaking her windows. Defendant did not see any emergency vehicles present at this time. She talked to Hughes while he was standing on his porch and saw Kelly standing in the doorway.

Although Kincaid testified he had noticed, at 9:30 p.m., that Hughes had a laceration to his head, and this injury was described by Jepp as "a hole—it looked like he had been shot, but it was just where somebody had hit him right in the middle of his head," defendant made no mention of noticing this injury when she spoke with Hughes at 10 p.m. Although Kincaid testified Jepp and one other victim had been removed from the scene in an ambulance, defendant testified she saw Jepp and Curtis standing near Kelly's car. Defendant acknowledged throwing a stick at Hughes' front window. She conceded the stick may have smashed the window, but stated she did not wait around to find out. Interestingly, Kincaid testified the front windows were *already* broken when he arrived at 9:30 p.m. According to defendant, at approximately 10:30 p.m. she saw some "rumbling" or "feuding" going on in front of Hughes' house. Defendant testified she left with her son to go to a friend's house, where she arrived at approximately 10:45 p.m. Defendant denied striking anyone or encouraging anyone else to do so.

Defendant was convicted of four counts of aggravated battery, one for each of the four victims, and one count of mob action. Defendant was sentenced to 90 days' incarceration and 30 months' probation.

## II. Jury Instructions

Defendant contends the court committed reversible error when it gave the following instruction to the jury:

"To sustain the charge of aggravated battery regarding Paul Jepp the State must prove either one of the following propositions:

EITHER

That the defendant or one for whose conduct she is legally responsible, knowingly, without legal justification caused great bodily harm to Paul Jepp;

OR

That the defendant or one for whose conduct she is legally responsible, knowingly, without legal justification caused bodily harm to Paul Jepp, and

That the defendant or one for whose conduct she is legally responsible used a deadly weapon.

If you find from your consideration of all the evidence that either one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that either one of these propositions has not been proved beyond a reasonable doubt you should find the defendant not guilty."

■ Defendant contends this instruction was misleading because it presented the jury with two contradictory directions regarding what its verdict should be if it found one, but not the other, of the alternative definitions of the crime had been proved. Defendant has waived consideration of this issue because she did not object to this instruction when it was given, nor did she raise her allegation of error in a post-trial motion. To preserve an argument for appeal, both an objection at trial and a written post-trial motion raising the issue are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Failure to object to a jury instruction waives the issue. *People v. Booker* (1992), 224 Ill. App. 3d 542, 555, 585 N.E.2d 1274, 1284.

Defendant contends the instruction constituted plain error. Under the plain error exception (134 Ill. 2d R. 451(c)), substantial defects in jury instructions in criminal cases may be reviewed by the court despite failure to make a timely objection, if the interests of justice require. (*People v. Thurman* (1984), 104 Ill. 2d 326, 329, 472 N.E.2d 414, 416.) The plain error exception to the waiver rule permits a reviewing court to consider issues waived for the purposes of review where (1) the evidence in a criminal case is closely balanced or (2) the error is so fundamental and of such magnitude the accused was denied a fair trial. *People v. Lucas* (1992), 151 Ill. 2d 461, 482, 603 N.E.2d 460, 469; 134 Ill. 2d R. 615(a).

■ Defendant argues the jury instruction misstated the burden of proof, a fundamental error of such magnitude as to deny her a fair trial. Defendant directs our attention to our decision in *People v. Dailey* (1989), 188 Ill. App. 3d 683, 544 N.E.2d 449. In *Dailey* the

jury was given an instruction regarding the propositions which must be proved beyond a reasonable doubt to support a conviction for battery. The jury was instructed if it found the State had proved each one of the propositions, it should return a verdict of guilty; however, if it found the State had not proved *each one* of the propositions, it should return a verdict of not guilty. We found this instruction misstated the burden of proof since the State was required to prove every one of the propositions. The jury should have been instructed that if it found the State had not proved *any one* of the propositions, it should return a verdict of not guilty. Although we reversed on other grounds, we noted this error might have been an additional ground for reversal. *Dailey*, 188 Ill. App. 3d at 686, 544 N.E.2d at 452.

Our decision in *Dailey* has been supplanted by a supreme court case arriving at a contrary conclusion. (*People v. Easley* (1992), 148 Ill. 2d 281, 592 N.E.2d 1036.) In *Easley*, the jury was given an instruction setting forth the two propositions required to sustain a charge of first degree murder. The instruction stated that if the jury found the State had proved these propositions beyond a reasonable doubt, it should find the defendant guilty, but that if it found the State had not proved *these propositions* beyond a reasonable doubt, it should find the defendant not guilty. (*Easley*, 148 Ill. 2d at 336-37, 592 N.E.2d at 1061.) The first instruction should have instructed the jury that if it found " '*each of these* propositions' " to have been proved beyond a reasonable doubt, it should find the defendant guilty. (Emphasis in original.) (*Easley*, 148 Ill. 2d at 337, 592 N.E.2d at 1061.) The latter instruction should have instructed the jury that if it found " '*any one of these* propositions' " had not been proved beyond a reasonable doubt, it should find the defendant not guilty. (Emphasis in original.) (*Easley*, 148 Ill. 2d at 337, 592 N.E.2d at 1061.) Thus, the not-guilty instruction erroneously advised the jury it should not return a verdict of not guilty unless it found the State had not proved *both* of the propositions, rather than *either* of the propositions. The supreme court found the instructions given did misstate the State's burden with regard to a finding of not guilty. However, the court determined the defendant suffered no prejudice as a result of this error, and the error was, therefore, harmless. The court arrived at this conclusion by determining that in order for the jury to have returned its verdict of guilty, it *had to find* the State had proved both propositions beyond a reasonable doubt. Since the jury found both propositions had been proved beyond a reasonable doubt, the error in the not-guilty instruction did not result in any prejudice to the defendant. *Easley*, 148 Ill. 2d at 338-39, 592 N.E.2d at 1062.

*Dailey* and *Easley* are similar as in both cases the not-guilty instruction informed the jury it should not return a verdict of not guilty unless it found the State had not proved both, rather than either, of the propositions necessary to sustain a conviction for the offense. The supreme court decision in *Easley*, finding the error in giving this instruction harmless, prevents the use of our reasoning in *Dailey* to support an argument such an error is not harmless.

Moreover, even if our reasoning in *Dailey* remained viable, the present case is distinguishable as the not-guilty instruction in *Dailey* reduced the State's burden of proof, whereas the not-guilty instruction in the present case imposed a *more* stringent burden of proof on the State. The appellate court has found, although the instructions given to the jury may be improper, where they place a *higher* standard of proof upon the State, the defendant is not prejudiced. *People v. Foster* (1990), 195 Ill. App. 3d 926, 954, 552 N.E.2d 1112, 1132.

As the State correctly notes in its brief, the instruction given in *Dailey* was an instruction regarding *elements* of the crime. The State must prove all elements of the crime, and a proper not-guilty instruction should inform the jury if the State failed to prove any one of the elements of the crime, a not-guilty verdict should be returned. While the State must prove *all* of the elements of a crime, it need only prove circumstances meeting *one* of the alternate definitions of the crime. Thus, the instruction in the present case, stating a not-guilty verdict should be returned if the jury found the State had failed to prove circumstances meeting either of the alternate definitions of the crime, had the effect of increasing the State's burden of proof by requiring it to prove circumstances meeting both definitions of the crime, when it was actually only required to prove circumstances meeting one of the definitions of the crime.

In light of the supreme court's decision in *Easley* and the fact the instruction, while erroneous, actually increased the State's burden of proof, defendant did not suffer any prejudice, and there was not a fundamental error so as to deny her a fair trial.

Defendant also argues the jury instruction improperly advised the jury of the State's burden of proof regarding the second of the two aggravated battery alternatives, because the jury was not instructed it had to find *both* bodily harm and the use of a deadly weapon in order to find defendant guilty of aggravated battery on the basis of the second definition. This argument is untenable as this portion of the jury instruction, which is identical to the pertinent pattern jury instruction, clearly stated the jury must find bodily harm *and* use of a

deadly weapon. Illinois Pattern Jury Instructions, Criminal, No. 11.10 (2d ed. 1981).

We also reject defendant's contention the evidence was closely balanced. Defendant was identified by the four victims as a participant and leader of the attack upon them. The four victims provided detailed testimony of the attack. Two bystanders corroborated the testimony of an attack. A police officer responded to a report of the attack at 9:30 p.m., at which time he observed lacerations on the heads of Jepp, Curtis, and Hughes, broken windows in the house and car, and observed Jepp being removed from the scene in an ambulance. The only evidence defendant was not involved in the attack was her own testimony.

In order to believe defendant's testimony she took no part in the attack, the jury would have to reject the four victims' identification of defendant, and their consistent and detailed account of the attack upon them. Moreover, defendant's testimony that the disturbance at the Hughes home, which she characterized as rumbling or feuding, beginning at 10:30 p.m. is inconsistent with Officer Kincaid's testimony that he responded to a call regarding the disturbance at 9:30 p.m., and saw the victims' injuries and property damage at that time. In addition to being inconsistent with the testimony of the four victims and Officer Kincaid, defendant's testimony is also self-contradictory in that she concedes the police had been to her house at sometime prior to 10 p.m., but places the attack at 10:30 p.m. There was no evidence presented at trial the police had been present at any time on the evening of October 10, 1993, other than responding to the call regarding the disturbance at Hughes' home. In short, since the only evidence at trial contradicting that of the State was defendant's somewhat incredible and contradictory testimony, we reject her characterization of the evidence as "closely balanced."

### III. CLOSING ARGUMENT

■ Defendant next alleges all five of her convictions ought to be reversed because the prosecutor made inflammatory remarks in closing argument. The first remark defendant complains of was as follows:

"Now, these people, James Hughes, Sandra Kelly, Connie and Curtis Vitzthum, they can never have restored to them the sense of security and safety that each one of us certainly deserves, which is the sense of feeling secure and safe in your own home. That can never really be totally restored to them. That's forever been taken away from them. Their injuries, fortunately, have healed."

Defendant objected to this remark at trial, and the trial court instructed the prosecutor to "[j]ust argue the facts."

We question whether this remark was improper, but conclude it did not prejudice defendant or constitute reversible error. Improper remarks by the prosecutor generally do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Johnson* (1992), 149 Ill. 2d 118, 145, 594 N.E.2d 253, 267; *People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200, 1205.) Any error resulting from the prosecutor's comments is usually cured when the trial court sustains objection or admonishes the jury. (*People v. McCarthy* (1991), 213 Ill. App. 3d 873, 885, 572 N.E.2d 1219, 1227.) In the present case, although the trial court did not state in specific terms that it sustained the defendant's objection, it instructed the prosecutor to "[j]ust argue the facts."

Additionally, since the evidence in the present case overwhelmingly established defendant's guilt, the remark made by the prosecutor was immaterial to defendant's conviction. In *Johnson*, our supreme court found the defendant was not prejudiced by the prosecutor's improper remarks, in closing argument, where the evidence of his guilt was overwhelming. (*Johnson*, 149 Ill. 2d at 145, 594 N.E.2d at 267.) As stated above, the evidence of defendant's guilt was overwhelming.

Moreover, the appellate court has noted error in the prosecutor's remarks during closing argument may also be cured by a proper explanation of the law given by the court in its instructions. (*People v. Hope* (1974), 22 Ill. App. 3d 721, 726, 318 N.E.2d 128, 132.) In the present case the jury instructions provided "[n]either sympathy nor prejudice should influence you." The jury was also instructed:

> "Closing arguments are made by the attorneys to discuss the facts and circumstances in the case, and should be confined to the evidence and to reasonable inferences to be drawn from the evidence. Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded."

As the trial court, in response to a defense objection, instructed the prosecutor to "[j]ust argue the facts," and in light of the jury instructions given, and the overwhelming evidence of defendant's guilt, we do not find she was prejudiced or that the remarks made by the prosecutor rise to the level of reversible error even if arguably improper.

Defendant also alleges the prosecutor's following remark was improper:

> "Paul Jepp's injuries are of such a nature that he may remember this and may experience the consequences of this evening for a long time to come and Connie Vitzthum testified she remembers it as a bad recurring dream. I would ask you based upon all the evidence that you have heard in this case, which I submit to you is unrefuted and overwhelming, that you restore to them the sense at least that in some measure in a civilized society justice can be done."

Defendant did not object to the second remark, and she has waived consideration of whether it was improper. Defendant has not argued, nor do we find, this second remark to constitute plain error.

We affirm the defendant's convictions.

Affirmed.

STEIGMANN, P.J., and COOK, J., concur.