THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARQUIS DEAN ROBINSON, Defendant-Appellant.

Fourth District   No. 4—95—0662

Argued February 19, 1997.—Opinion filed March 5, 1997.

904

Daniel D. Yuhas and Paul G. Lawrence (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Scott A. Manuel (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Following a jury trial in March 1995, defendant Marquis Robinson was found guilty of attempt (armed robbery) (720 ILCS 5/8—4, 18—2 (West 1994)); he was acquitted of first degree murder (720 ILCS 5/9—1 (West 1994)). In July 1995, he was sentenced to 15 years' imprisonment. He now appeals, arguing (1) the trial court erred in refusing to suppress his confession; (2) he was not proven guilty beyond a reasonable doubt; (3) he was denied a fair trial by the prosecutor's comments in closing argument; and (4) the trial court erred in considering the death of the victim at sentencing. We affirm.

The evidence of defendant's guilt at trial consisted primarily of his confession, which he now contends was coerced. Specifically, he claims he would not have made the statement but for the State's offer of leniency toward his girlfriend, Deanetra Brigham. Brigham was arrested at the same time as defendant, and the police believed she was either involved in the crime or had purposefully refused to disclose knowledge of the crime. When the investigating officer, Officer Keith Garrett of the Danville city police, informed defendant Brigham was being held and why, defendant suggested Garrett was just "fucking with her" and proclaimed Brigham's lack of knowledge or involvement in the whole affair. Defendant then indicated to Garrett he would agree to make a statement if Brigham was released. Garrett left the room and brought Brigham up from the booking area. She was allowed to enter the room where defendant was sitting and she was then released. Defendant then confessed his involvement in the crime.

■■ ■ To be admissible, a confession must be given voluntarily. *People v. Oaks*, 169 Ill. 2d 409, 446, 662 N.E.2d 1328, 1344 (1996). "The test of voluntariness is whether the statement was made freely, voluntarily and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time he confessed." *People v. Clark*, 114 Ill. 2d 450, 457, 501 N.E.2d 123, 126 (1986). The voluntariness of a confession is judged by the totality of the circumstances surrounding its making. *People v. Melock*, 149 Ill. 2d 423, 447, 599 N.E.2d 941, 951 (1992); *People v. McDaniel*, 249 Ill. App. 3d 621, 634, 619 N.E.2d 214, 225 (1993), *aff'd*, 164 Ill. 2d 173, 647 N.E.2d 266 (1995). Factors affecting the voluntariness of a confession include the age, education and intelligence of the accused, the duration of the questioning, and whether he received his constitutional rights or was subjected to any physical punishment. *Oaks*, 169 Ill. 2d at 446-47, 662 N.E.2d at 1344; *Melock*, 149 Ill. 2d at 447, 599 N.E.2d at 951. No one factor is dispositive. *Oaks*, 169 Ill. 2d at 447, 662 N.E.2d at 1344; *Melock*, 149 Ill. 2d at 447, 599 N.E.2d at 951.

While offers of leniency are also a factor to be considered (*People v. Ruegger*, 32 Ill. App. 3d 765, 769, 336 N.E.2d 50, 53 (1975); *People v. Shaw*, 180 Ill. App. 3d 1091, 1094, 536 N.E.2d 849, 851 (1989)), a confession is not rendered involuntary simply because such an offer has been made. See *People v. Anderson*, 225 Ill. App. 3d 636, 641, 587 N.E.2d 1050, 1055 (1992); *People v. Veal*, 149 Ill. App. 3d 619, 624, 500 N.E.2d 1014, 1018 (1986); *People v. Wright*, 127 Ill. App. 3d 747, 751, 469 N.E.2d 351, 354 (1984); *People v. Noe*, 86 Ill. App. 3d 762, 766, 408 N.E.2d 483, 486 (1980); *People v. Baine*, 82 Ill. App. 3d 604, 610, 403 N.E.2d 57, 61 (1980).

When it is the defendant himself who begins bartering for leniency in exchange for a statement, a claim of coercion becomes far less credible. See *Wright*, 127 Ill. App. 3d at 751, 469 N.E.2d at 353-54. In *Wright*, the defendant, charged with murder, asked a detective whether his codefendant, D.C. Clark, was in custody. Upon learning he was, the defendant told the detective he would be willing to give a statement in exchange for a promise by the State not to seek the death penalty against him. When the State later agreed not to seek the death penalty, the defendant confessed to the murder. The trial court, finding "these so-called inducements were actually conditions originated and tendered by the defendant in return for which he was willing to give a truthful statement," concluded the defendant's confession was entirely voluntary, and the appellate court in *Wright* affirmed. *Wright*, 127 Ill. App. 3d at 752, 469 N.E.2d at 354.

■ Applying these principles to the present case, the trial court's finding of voluntariness is not against the manifest weight of the evidence. See *Oaks*, 169 Ill. 2d at 447, 662 N.E.2d at 1344 (standard of review is whether finding of voluntariness is contrary to the manifest weight of the evidence). All the evidence at trial established it was defendant who first expressed a willingness to make a statement, and it was he who set the conditions upon which such a statement would be made. Defendant does not contest the evidence on this point, specifically acknowledging in his brief "[t]here is no dispute that the [d]efendant indicated to Officer Garrett that if his girlfriend was not charged then he would talk to them." Garrett testified he released Brigham only after defendant made the above statement. Defendant initiated and controlled the bargaining here, so the cases upon which he relies, *Ruegger* and *Shaw*, are distinguishable.

Not only was it conclusively established no improper offer of leniency was made in exchange for defendant's confession, there are no other factors indicative of involuntariness that weigh in defendant's favor. Defendant admits as much in his argument, acknowledging "many of the [other] factors indicating involuntariness are not pres-

ent" in this case. Defendant was adequately informed of his rights prior to waiving them. The questioning was brief, lasting just a little over one hour, and there was no evidence of physical coercion.

■ Defendant next contends he was not proved guilty of attempt (armed robbery) beyond a reasonable doubt. He argues there was little evidence introduced against him, other than his confession, which established his guilt. The State seems to agree with this assessment of the evidence but argues such evidence was sufficient to find defendant guilty beyond a reasonable doubt. The testimony at trial revealed the following.

Garrett testified to the substance of defendant's confession. According to defendant's confession, the following events transpired on April 23, 1994. Defendant, Izell Pittman, Cortez Brown, Quonie and George Barney, and Spurgeon Barber decided to go to Contrel Grigsby's apartment in Danville and rob Grigsby, who they believed was a drug dealer. Pittman and Brown went in one car, while defendant, the Barneys, and Barber went in another. Pittman was to enter first and determine if there were drugs and money inside. Pittman went inside, and defendant and the others were allowed entrance shortly thereafter.

Once inside, defendant grabbed Grigsby, shoved him backward, and struck him with the gun. He demanded Grigsby give him the "stuff" and then went through his pockets. Finding nothing, he next went upstairs and began rummaging around. After hearing a gunshot, he ran downstairs and out to the car with the Barneys and Barber. They then went back to defendant's residence at 705 Chandler Street.

Defendant admitted he was wearing a hooded sweatshirt on the night in question and was carrying a .45-caliber weapon. He told Garrett he and several of the others had worn either dust masks or surgical gloves or both. The masks, gloves, and defendant's hooded sweatshirt were placed in the trash at the Chandler Street address. A search warrant executed several days after the robbery produced surgical latex gloves from a trash can behind the house at Chandler Street, as well as shell casings matching those found at the crime scene.

In addition to defendant's confession, however, a variety of other evidence supported the jury's finding of guilt. Alvin Jones, a witness at Grigsby's apartment on the night in question, testified the men who entered the apartment wore dust masks and one wore a hooded sweatshirt like the one defendant admitted he was wearing. His testimony corroborated much of defendant's statement to Garrett, including the fact three men entered the apartment, one at first and

two later. Jones testified Pittman was definitely one of the men who entered the apartment.

Defendant and Brigham testified on defendant's behalf. Both claimed to have been at a bar called Harold's Cigar Store (Harold's) prior to the shooting, driving over together to the site of the shooting only after they had heard about it. Brigham was thoroughly impeached by the State's witness Steve Wilson, a Danville police officer. At trial, Brigham first admitted having requested to speak with Wilson, whom she considered a friend, following the shooting. She then, however, denied making each and every statement Wilson would later testify she made when they met. Brigham's story on April 29 concerning the events of April 23 was significantly different from the story she (and defendant) gave at trial.

Wilson testified regarding the substance of the conversation he had with Brigham on April 29. Brigham told Wilson she, defendant, Barber, the Barneys, Pittman, and Brown had all been at 705 Chandler Street on April 23. Everyone except Brigham left, supposedly to go to Harold's, and when they returned to Chandler Street later that night, she overheard the men talking about a shooting in the Beeler Terrace housing projects (where Grigsby lived). Given the glaring inconsistencies between Brigham's April 29 statement to Wilson and her trial testimony, the jury would have been justified in disbelieving the testimony of defendant's girlfriend.

Defendant was also persuasively impeached at trial. After extensive questioning on cross-examination as to who else was in Harold's with him on the night of the robbery, defendant finally gave up the names Andre Parchman and Donovan Parchman, two brothers with whom defendant was acquainted. Andre and his brother Donovan both testified in rebuttal for the State. Both admitted knowing defendant, and both definitively testified they had *not* been in Harold's on the night of the shooting at Beeler Terrace. In fact, both testified they frequented Harold's and had *never* seen defendant in Harold's on any prior occasion. The jury was therefore justified in rejecting defendant's trial testimony as well. When viewing all of this evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found defendant guilty of attempt (armed robbery) beyond a reasonable doubt. See *People v. Campbell*, 146 Ill. 2d 363, 374, 586 N.E.2d 1261, 1266 (1992) (stating the standard of review where defendant challenges the sufficiency of the evidence).

■ Defendant next asserts he was denied a fair trial when the prosecutor made the following remarks in closing argument prior to defendant's acquittal of first degree murder:

"So we come to the final and end defense and this is something I would suggest that Mr. Gerlach [(the other prosecutor)] and I have always been worrying about from the first day. Who cares? This is a drug dealer from Detroit. He's dead. The world is better for it. Okay. Let's give them the attempted armed robbery not the first degree murder. We'll punish him, because he was doing something wrong, but he just got a drug dealer."

Defense counsel objected to this argument. The trial court sustained the objection and then admonished the jury:

"The jury has heard the evidence. Closing arguments should be confined to the evidence and reasonable inferences to be drawn from the evidence. And anything not based upon the evidence should be disregarded."

Defendant acknowledges he was acquitted of first degree murder as suggested by the prosecutor's remark but argues the remark diminished the possibility of acquittal on the attempt (armed robbery) charge.

A prosecutor is permitted wide latitude in closing argument. *People v. Enis*, 163 Ill. 2d 367, 407, 645 N.E.2d 856, 874 (1994). Improper comments by a prosecutor usually do not amount to reversible error unless they result in substantial prejudice to the accused. *People v. Johnson*, 149 Ill. 2d 118, 145, 594 N.E.2d 253, 267 (1992); *People v. Perkins*, 247 Ill. App. 3d 778, 786, 617 N.E.2d 903, 908 (1993). A defendant must demonstrate the prosecutor's comments "so infected the entire trial proceedings that they denied him a fundamentally fair trial." *People v. Jones*, 156 Ill. 2d 225, 247, 620 N.E.2d 325, 334 (1993). The act of sustaining an objection and admonishing the jury will usually cure any resulting prejudice. *People v. Moore*, 171 Ill. 2d 74, 105-06, 662 N.E.2d 1215, 1229 (1996).

Assuming, *arguendo*, the prosecutor's comments here were improper, defendant has failed to demonstrate substantial prejudice as a result of the remarks. The jury did exactly what the prosecutor was urging them *not* to do. Further, the trial court sustained defendant's objection and then admonished the jury to consider the evidence only, thereby curing any potential prejudice.

Finally, defendant argues the trial court erred in considering defendant's role in the killing of Grigsby at his sentencing for the attempt (armed robbery) conviction. He argues his acquittal of first degree murder should have precluded the trial court from considering that charge in sentencing defendant. The trial judge sentenced defendant to 15 years' imprisonment, the maximum term permitted by law, and, in doing so, indicated he considered defendant's accountability in the murder in aggravation.

■ Evidence of other criminal conduct is admissible at sentencing, even though a defendant has previously been acquitted of that conduct. See *People v. Jackson*, 149 Ill. 2d 540, 549-50, 599 N.E.2d 926, 930 (1992) (noting in *dicta* a majority of jurisdictions permit introduction of evidence of other criminal conduct at sentencing regardless of defendant's acquittal of that conduct); *In re Nau*, 153 Ill. 2d 406, 426, 607 N.E.2d 134, 143-44 (1992) (evidence of criminal conduct admissible at subsequent civil commitment hearing despite previous acquittal of the criminal charge, following *Jackson*); see also *United States v. Watts*, 519 U.S. 148, 136 L. Ed. 2d 554, 117 S. Ct. 633 (1997) (holding sentencing courts may consider evidence of conduct or charges of which a defendant was acquitted); but see *People v. Damnitz*, 269 Ill. App. 3d 51, 62-63, 645 N.E.2d 465, 473-74 (1994). The burden of proof at sentencing is lower than proof beyond a reasonable doubt, and an acquittal does not conclusively establish the defendant did not commit the acts alleged. *Nau*, 153 Ill. 2d at 426, 607 N.E.2d at 143-44; *Jackson*, 149 Ill. 2d at 550, 599 N.E.2d at 930. The evidence of prior conduct must, however, be relevant and reliable. *Jackson*, 149 Ill. 2d at 549, 599 N.E.2d at 930. "Such evidence *** should be presented by witnesses who can be confronted and cross-examined *** and the defendant should have an opportunity to rebut the testimony." *Jackson*, 149 Ill. 2d at 548, 599 N.E.2d at 930.

■ In light of these principles, the trial court justifiably took into account the death of Grigsby in sentencing defendant on the attempt (armed robbery) conviction. As the trial court noted, there was sufficient evidence of defendant's complicity in the killing to have justified a first degree murder conviction on the theory of accountability. Relevant and reliable evidence was presented as to defendant's role in the murder of Grigsby. Defendant was given every opportunity to confront and cross-examine witnesses in defending his first degree murder charge. His acquittal hardly established his innocence of the crime, considering he was convicted of attempt (armed robbery) during the course of which a murder occurred.

Defendant does not discuss *Jackson* or *Nau*. Rather, he relies on *People v. Gant*, 18 Ill. App. 3d 61, 309 N.E.2d 265 (1974). *Gant* is readily distinguishable. The complaining witness in *Gant* died two days after being robbed by the defendant, but he was not charged with any offense related to her death. The trial judge, believing the defendant's actions were partly responsible for the complainant's death, took this fact into consideration in sentencing the defendant on his robbery conviction. The appellate court in *Gant* reduced the defendant's sentence, since he was never charged with the victim's death and "there was absolutely no evidence adduced at trial which

would support" the trial court's view of his role in her death. *Gant*, 18 Ill. App. 3d at 67, 309 N.E.2d at 268.

In contrast to *Gant*, there was considerable evidence of defendant's role in the victim's death here. Defendant was charged and prosecuted for the crime, although he was eventually acquitted. Defendant does not contend his sentence exceeds the maximum permitted by law. We find nothing improper about defendant's sentence.

The judgment of the trial court is affirmed.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.